Good morning, your honors. Eric Slepian on behalf of Denise Salaz. I'm going to attempt to reserve four minutes for rebuttal. This is a social security disability claim and the issue is the review of the administrative law judge's decision. This court is to review that decision de novo. Ms. Salaz suffers from a number of impairments including fibromyalgia, carpal tunnel syndrome, irritable bowel syndrome. When you say we're to review this de novo, we are to review it de novo, but we are supposed to do the same deference that the district court has for the ALJ's opinion, right? Yes, your honor. In terms of... I mean our review is the same as the district court's, but nonetheless the district court has some responsibility to the ALJ opinion, correct? There is some responsibility, but this court's responsibility is to make sure that the administrative law judge set forth a sufficient decision. If that decision is not... All we're talking about then is substantial evidence. That's all I'm trying to get to, so you can move forward. I just don't want you to get out of where we are. I understand what my standard is. It's the same standard the district court had, and then I'm back to substantial evidence. Let me go to the clear and convincing evidence, or excuse me, clear and convincing reasons to find your client's testimony less than fully credible. Let's look at that particular issue. It seemed to me like the ALJ provided a detailed description of your client's symptom testimony, what your client suggested. Then the ALJ provided detailed inconsistencies in the testimony, and with other evidence in the record. Why is that not enough? First, your honor, I do want to address your substantial evidence issue, because there are two prongs to reversing an administrative law judge's decision. One is substantial evidence, and the other is legal error. I understand. Now to answer your question directly, you have to look at what those reported activities are. Just because an administrative law judge says that the claimant's not credible because she's able to take care of three children, we have to look at how does she take care of those three children. One of those children was a 12-year-old, helped take care of the younger children. My client was supposed to take kids to school in the morning. Two days a week, she had friends do it. She had help from other people that would come over and assist her. The administrative law judge said she was able to cook. But if you look, the reports all say light cooking, such like microwave foods, things to that effect. So you can't just say because she lived a normal life that she's not credible or not disabled. You have to look at the specifics of it. Ms. Salaz would frequently rest during the day. She was consistently at the doctor's office. She was complaining a lot about her pain. And if you take a look at the case of Vardigan, it specifically states that if you're going to find activities of daily living to impugn credibility, then what you have to look at is see if she spends a substantial part of her day doing those activities, and what is the nature and extent of those activities. And when we look into it and we delve into it, Ms. Salaz, there's no indication she spends a substantial part of her day doing activities. And the issue in this case... You're suggesting then that what the ALJ said were the detailed inconsistencies are not true? Well, I can't say in terms of... The fact that it's inconsistent, that's not true. The fact that she did certain activities, that's correct. It's just the manner in which she does these activities. Is Salaz's pain testimony consistent with the medical records? A hundred percent consistent with the medical evidence, Your Honor. If we take a look at her pain testimony, she's repeatedly seeing her rheumatologist complaining about very severe pain. They continuously increased her Percocet until the point where she was at maximum dosage. They went to a patch, and they increased the dosage of her patch. Now, I know the commissioner in their brief was questioning the degree and would talk about improvement, and I offered a chart in my reply brief that this is what they say, but when you look at the records and you see what she's actually reporting and what the doctors are actually treating, they're two very different things. This record continuously says she's in a great deal of pain, she's on maximum medications, she's doing everything she can to try to decrease her pain. She would diet, she lost weight, and yet her pain continued. Now, granted, she's got a number of impairments, and so when you see something like she reports some improvement in her carpal tunnel symptoms following surgery, they're characterizing that evidence as she's reporting improvement. But she's not reporting improvement in her fibromyalgia pain, and that's the pain that's disabling her on a regular and consistent basis. It seems to me like your argument is, and this is the first time I've really encountered this argument, I guess I don't know how one can say that the ALJ's reasons for discrediting SLAWs are not clear or maybe even convincing, but what I'm trying to figure out is are they supported by the substantial evidence, which it seems to me what, and that's why I talked about it today, seems to me what you're really saying is that the record as a whole is not consistent with what the ALJ has said. It's not consistent with his characterization of the evidence. That is correct. So, therefore, if I review the record as a whole, that I have no substantial evidence to sustain what the ALJ has suggested? That would be correct. Now, if we go back to the doctors, it seems to me that the opinions of Dr. Benjamin and Dr. Fairfax are really opinions of a treating physician, are they not? They are both treating physicians. Dr. Fairfax is a board-certified rheumatologist who treated the claimant since 2006 or possibly earlier, and Dr. Benjamin is an internal medicine, and he's treated the claimant since 2008. He's the primary care physician. So at that point, I have to give them maximum deference, correct? That is correct. So what did the ALJ rely on? According to the ALJ, the ALJ basically said that because two non-treating, non-examining consulting physicians disagreed, she's going to give substantial weight to those two opinions. That type of rationale is clearly contrary to Lester v. Chater, as well as Orn. And when you have the contradicting medical... Were they even doctors? Well, I do believe they are doctors. They haven't practiced in many years. They were retained by the state agency. Well, the reason I said that is because only one of them signed as a doctor. That's true. Only one of them signed as a doctor. But I do believe they are both doctors. Now, the district court... Did the ALJ discuss the adjudicator-examiner opinions? Other than saying they've reviewed the record, which isn't actually accurate? No. Dr. Fairfax and Dr. Benjamin's opinions were contradicted by this other testimony, correct? No. Well, so, first judge, it's not testimony. They just submitted these reports. And I understand sometimes we consider it testimony. But if you ask me if they conflict, I'm going to tell you to look at what they said. I did look at what they said. Okay. So these two physicians who never saw my client, didn't review all the records, their conclusion was Ms. Salaz has no severe impairment. And what that means is she can lift and carry up to 100 pounds. She can stand for eight hours. She can sit for eight hours. Her question was much more limited. Oh, sorry. Her question was because Fairfax and Benjamin's opinion were contraindicated by the medical testimony. Does that change what the ALJ is required to do for us to sustain the ALJ's disposition? No, it does not. And so the reason being is that these are non-treating, non-examining consulting physicians. I understand that. And I've been through this. We've all been through this again and again. We understand the difference. So it doesn't assist us at all, pre-argument. But if the ALJ gives specific legitimate reasons, then don't we have to sustain the ALJ? If the ALJ gives, well, you have to look at the standard. It would have to be, the treating physicians in this case are entitled to controlling weight. Excuse me, excuse me. You're missing my point, and I don't want to interrupt you. No, I appreciate that you do. If there's a counterindication between physicians and the treating physicians, and if the ALJ then gives specific legitimate reasons, then don't we go with the ALJ? So if the ALJ gives specific and legitimate reasons, we still have to make sure that the ALJ met the standard of proof. And the point I'm trying to get is when we have non-treating physicians like we do here, then it's not considered substantial evidence. That isn't what we said in Bayless. It is what the court stated in Leskovee-Chater and Ornn. You agree that we did not state that in Bayless? My recollection is that in Bayless a non-treating physician opinion was considered to be conflicting evidence. But I believe in Bayless there was a lot more substantial justification and other evidence that tended to support the non-treating, non-examining physician opinions. And here we don't have that. Even the district court noted, and I know we do this de novo, but the district court said, hey, non-treating, non-examining, we're still going to apply a controlling standard to the opinion of treating physicians. The district court cited, I forget the name of the case, Tenapatin, something like that. But Lester and Ornn are just as good sites on that issue. Where did the district court go wrong? Where did the district court go wrong? Well, one of the things the district court said was that the lack of abnormal findings, such as decreased range of motion, neurological deficits, was evidence that reported symptoms wasn't as severe as alleged and also detracted from treating physician opinion. In a fibromyalgia case and also with the irritable bowel symptoms, every circuit court has found that reasoning to be incorrect. That is not substantial evidence to detract from any of this evidence of disability. I would point the court to... What exactly is not substantial evidence? The normal range of motion is not evidence that she's not credible or not disabled. It's not evidence that the treating physician opinion is not entitled to greater weight. It's not a reason to detract. The administrative law judge said there were no neurological deficits. These are not findings of fibromyalgia. One, I think it's an out-of-circuit case, Seventh Circuit, says you can't say an individual's prostate cancer isn't severe because the claimant's not complaining of headaches. The citation and the conclusion must form a logical bridge. Here we can't say that an individual suffering from fibromyalgia is not disabled because they don't have decreased range of motion or because there are no neurological deficits. Not only every circuit court has made that finding, but the commissioner issued policy ruling 12-2P, and it says exactly that. Fibromyalgia is not supposed to cause abnormal neurological findings. It's not supposed to cause abnormal X-rays. Let me make sure I have this pretty clear because the government's going to get up next. It seems to me that I have two treating physicians' testimony here, that these two treating physicians testified that the ALJ did not even discuss the disability adjudicator's examiner's reports, and yet, without even discussing them, he gave the two treating physicians' testimony minimal weight, that the district court thereafter, in an effort, if you will, to save the ALJ's opinion or whatever, came up with the adjudicator examiner's testimony. Isn't that right? Yes. Isn't that what happened? Yes, Your Honor. So what we're really doing, if we were to affirm, is we're saying that the district judge can come up with something that the ALJ did not even rely on or at least didn't reference in an effort to support the ALJ's opinion? Is that what we're doing? Well, you can't do that because that would be considered post hoc rationale. It seems to me, then, as to the opinions here, unless I can find something that's contradictory evidence, I have to accept them. And the ALJ didn't point it out. All the ALJ said was, I'm giving it minimal weight because it's inconsistent. The first time I even come up with any inconsistent opinion is when the district court comes up with it. Is that true? Rechecking that decision, I do believe the ALJ decision, and that does look like correct, Your Honor. It's pure post hoc rationale, which I don't even think would meet their burden. All right. I just wanted to make sure because I think the government has to tell me about that. Here she comes. Thank you, Your Honor. I'm Catherine Bostwick, representing the government. Here, although Salaz alleged that she was completely unable to work due to disabling pain, the record also showed that she remained able to work, running her own business during part of the relevant period, that she maintained a relatively normal lifestyle, and that her physical examinations demonstrated that she retained generally normal functioning, including a normal gait and muscle strength. In light of this record, the ALJ could reasonably conclude that she retained the residual functional capacity to perform a reduced range of sedentary work. It seems to me you skipped over a lot of stuff when you go over there. I have two treating physicians. One I could even call a specialist. They look at her. They say what her conditions are. In normal, if an ALJ has two treating physicians and there's no testimony to the contrary, then he cannot get rid of their opinion. I think that's a good point, and I also want to emphasize that the ALJ did not completely reject these opinions. He evaluated them. Frankly, the things he rejected them for are minimal in comparison to what's in the record. I mean, my biggest problem with this case for the government is I've got two treating physicians. The ALJ receives their testimony, never talks about any inconsistent opinion from any other professional at all, says it's inconsistent with the record and therefore diminishes their opinion, and then the district court tries to come up with some post-hack is what he called it. I don't call it that. Post-hack rationale for doing what he did. That doesn't seem to me to be fair or legal. Fair doesn't usually make it. Legal does. Well, here both of the reviewing physicians simply opined that her physical impairments were non-severe. They didn't assess her with any functional limitations, so I think they really weren't of much assistance to the ALJ in actually evaluating her functional limitations. What can we do? What can she actually do? He says they're minimal weight because they're inconsistent with the record. I've never seen that ever make hay. He's got to come up with something to get rid of what they say. And he did here. I mean, let's take a look at Dr. Fairfax's opinion, who was the treating rheumatologist. I want to point out Dr. Fairfax actually opined that she had some ability to do some things. He found that she could sit more than three hours but less than four hours, she could stand and walk for less than two hours, and she could lift and carry more than 15 pounds but less than 20 pounds. The ALJ did consider this opinion, and the ALJ's residual functional capacity assessment was consistent with many of the limitations that he assigned, that he assigned Dr. Fairfax did. Like Dr. Fairfax, the ALJ limited Salaz to only occasional balancing, crouching, and climbing, and avoiding concentrated exposure, and also limited Salaz to sedentary work, which requires lifting and carrying no more than 10 pounds. So the ALJ's RFC was actually slightly more restrictive than Dr. Fairfax's opinion in this regard. But to the extent the opinion suggested greater limitations, this is where the ALJ differed from Dr. Fairfax's opinion and did provide specific and legitimate reasons for finding that Dr. Fairfax's opinion wasn't completely consistent with the record. As the ALJ- Well, the ALJ says, for instance, the evidence shows that she was less restricted in her activities than Dr. Benjamin says. What's the explanation of that in his record to suggest that? I mean, he doesn't say, so I've got to go find it. Well, the ALJ does provide- I wish he would give me some background so I'd know where he's looking. But what's the explanation of what evidence in the record supports that finding? What is the explanation of his opinion? The ALJ provided several reasons for finding that Dr. Benjamin's opinion was inconsistent with the record. Dr. Benjamin opined that she was extremely limited by irritable bowel. He said she would have symptoms three times per day, 90 times per month, with an average duration of three hours per episode. But where's the support for that opinion, for the severity of those symptoms in the record? And that's what the ALJ was concerned about here. Salaz never reported that she was experiencing symptoms to that severity. There are a few- Reported to whom? Reported to her treating physicians or to any medical professional. There's a few notations in the record that, you know, she was experiencing IBS. She had a colonoscopy that was generally normal. On one point, he noted that she had abdominal tenderness. But she simply never told, there's no evidence that she ever told Dr. Benjamin, look, I'm completely incapacitated by IBS. I'm having symptoms three times per day with an average duration of three hours per episode. I think it was reasonable for the ALJ to conclude that if someone is experiencing symptoms like this, which are very severe and very incapacitating, that she would be reporting them to her treating professional. And, again, even if we wouldn't weigh the evidence the same way, the question here is whether the ALJ's evaluation and weight given to the evidence was reasonable. So did the ALJ think that the physician made it up? I mean, I don't think the ALJ knew or, you know, I don't think, I don't want to speculate as to why the ALJ, what the ALJ thought about it. The ALJ simply concluded this isn't supported by the record. This is inconsistent with her actual treatment notes. That's what the ALJ has to look at. Well, when I read the ALJ opinion, I couldn't find the good reasons for that she is less restricted in her activities than Dr. Benjamin says. I can't find the evidence in the record that stress does not increase the symptoms. I can't find the evidence in the record that the symptoms Dr. Benjamin suggests were less severe. I can't find in the record where the IJ points out what specific evidence in the record supports the determination that his opinion is inconsistent. I mean, I'm trying to figure this out based on what he says, and then I have to go to the record to come up with something? Well, I mean, the ALJ has a pretty long discussion of Dr. Well, I read what the ALJ says, but when we're talking about an opinion of a treating physician and clear and consistent opinions to tell me why they're not going to give appropriate weight to those opinions, it seemed a little worrisome to me. That's why I wanted you to discuss it. The ALJ was looking at, you know, there's a lack of evidence in the record. There's a lack of evidence in the record to support this opinion. Where does she ever report that stress increases her symptoms? There's no notation in the record that she ever reports that. She actually states in her function report that she could handle stress well. Where does she report that her IBS symptoms are as severe as he says? She never reported that. The ALJ found that her activities were inconsistent with this limitation, that she would be incapacitated for three hours per day up to three times per episode. So that's what the ALJ was looking at here, the lack of evidence in the record. And Dr. Benjamin's own treatment notes, if he's going to assess these limitations, it's reasonable for the ALJ to insist on some support in the treatment notes. Otherwise, like you said, where does the limitation come from? Is that the law? If the physician reports that says that this is what my patient is experiencing, do we have law that says that we go back to see if that's supported by his treatment or her treatment notes? That it should be consistent with the treatment notes.  Consistent. Consistent. But this isn't, are there notes here that are inconsistent? I thought that the problem here was that the ALJ was saying, well, I don't have a note for that. So therefore, I'm not going to accept it. And I didn't understand that we had case law that said that that's okay. Inconsistency I can understand. Right. The ALJ is looking at the consistency. So I think, again, the ALJ here was focusing on the severity. The severity between the reported limitations, the opinion, and the treatment notes. The treatment notes aren't consistent with the severity that he recorded and provided in his opinion. If I disagree with you as to the weight should have been given to the opinions of Dr. Benjamin and Dr. Fairfax, this is a hypothetical. And I, therefore, I look at whether there's clear and convincing reasons to find that the claimant's testimony is credible or not credible, then, of course, the RFC would be faulty. Correct? Here the ALJ didn't doubt that she had pain. And the RFC is actually. Answer my question. If I disagree as to the appropriate weight with the opinions of Dr. Benjamin and Dr. Fairfax, and I disagree with the ALJ as to whether she's credible or not, the RFC is faulty. Correct? If you accept Dr. Benjamin's opinion, then it would be inconsistent with the RFC. Okay. In that instance, should I remand for further proceedings or credit the claimant's testimony? Here if the court does find error, the appropriate remedy would be to remand for further proceedings. Why? In Treichler, the court clarified that credit is true only applies in very narrow circumstances. In Burrell, the court also discussed that we have to look at whether the record would create serious doubt as to whether the claimant is disabled. Here the objective medical evidence showed that Salaz retained generally normal functioning. She had a normal gait, normal range of motion in all her extremities. Over periods of years, her physical examinations were generally normal. Her carpal tunnel symptoms were almost completely resolved following surgery in her right arm. She does rely on carpal tunnel and in other limitations related to her hand. So that was almost completely resolved following surgery. She was able to work at different points throughout the period. She did maintain a relatively normal lifestyle. The evidence did show that she reported improvement in her pain with medication, and there are two state agency physician opinions, even though the ALJ didn't mention them, that state that her physical impairments were non-severe. That would be enough to create serious doubt as to whether or not she is actually disabled. Let me see if I understand correctly. What you're saying is that the treating physician doesn't have any symptoms justifying the opinion that he made. Are you suggesting that this was a mistake? Are you suggesting that perhaps this person is trying to hide things in the record, this doctor? Apparently, the non-treating doctors are taking the position that there's something pretty incorrect about what the treating physicians were doing. How do we handle that? I guess I'm not sure of your question. Do you want me to? I guess I don't want to speculate as to why. No, I'm following my colleague's question of whether we, if we completely disagree with the government on the position, whether we should send it back or not. It seems to me that the upshot of the record as I see it is that the non-treating doctors are making pretty strong accusations, and that, it seems to me, is something that needed to be looked into from my view. But I don't know what the non-treating doctors said that would lead me to that other than they say there's no evidence at all that the person has the symptoms that led the doctors to their conclusions. I mean, the reviewing physicians look at the record and they said that there's no objective medical evidence that would support that she had any functional limitations. So on remand, this would be something that they could, again, look at the record, look at the record as a whole, the updated record, and reevaluate. She could get a consultative examination on remand to actually determine what are her functional limitations here, what's consistent with the record. So the remand wouldn't be to the district court. The remand would be back to the agency. Do you have anything further? If you have any further questions, I'm happy to answer them. Thank you for your argument. I'm not sure I took note. You've got 31 seconds. Thank you. I'm going to spend these 31 seconds answering the court's last question, why we should remand this for a calculation of benefit. If you're going to look at the weight entitled to different physician opinions, I would note that treating physician opinion under the facts of this case is entitled to controlling weight, and there's nothing here that would indicate a lesser standard. And if we give a controlling weight, then disability is proved, and it would be futile to go back and have another hearing. The other issue that I want to discuss is look at what those physicians wrote and then look what the judge wrote. The administrative law judge found a less than sedentary residual functional capacity. That administrative law judge is telling us those non-treating, non-examining physicians of no significant impairment, no limitations at all, is just not supportable by this record. Her own words are indicating that. The judge found less than sedentary, which is the most restrictive you can get. Social Security policy ruling SSR 96-9P says it's so significant to be at less than sedentary, it's relatively rare. That's how significant her impairments are. I'm sorry, did you want to ask a question, Judge? I just think that we should not, what you're saying is we should not treat this as a case in which there was just an inadequate reason for not crediting the treating physician since there is no contradictory evidence, medical evidence that could be relied on. Right, I'm asking the court to take notice that it's a controlling weight standard and that under the facts of this case that would not be applicable. Thank you very much. Thank you both for your argument. Appreciate it. Case 1415699, Salaz v. Colvin is submitted.
judges: Wallace, Schroeder, N.R. Smith